May it please the Court, Linnea Johnson for Edrick Brown, whose family is here present in the courtroom. I'd like to address three issues today. The first is whether the review of the due process severance claim should proceed in this Court de novo. Second, whether review of cumulative error should proceed de novo or under AEDPA. And finally, whether characterizing the prosecutorial misconduct as inferences reasonably drawn from the record is an unreasonable application of clearly established Federal law under AEDPA. The review of the due process severance issue should proceed de novo because it has been adjudicated on the merits It has not been adjudicated on the merits within the meaning of AEDPA and is therefore not subject to the AEDPA standard. How would the result be any different under the, in this particular instance, under the two forms of review? In other words, if the result would be the same under either standard, we don't have to decide the legal issue that you've raised about the standard of review. I think that's correct. If the result would be the same under de novo review or AEDPA review, we wouldn't have to reach that issue. So why did the consolidation cause a due process problem in this case? There are two primary reasons it caused a problem. First, it ended up coupling a very, a very weak case with a strong case. And while pretrial, the cases appeared to be of similar strength, the way it played out at trial, that was no longer true. And the second case, the Perrine case, became a very weak case. And that's so for three reasons. First, Perrine's credibility steadily declined. The prosecutor admitted his testimony was punctuated with lies and inconsistencies, substantial and insubstantial. But each of the charges was relatively simple. I mean, this was not a complicated case. Neither half of it was complicated. And why wouldn't we presume that the jury kept everything separate and did what it was supposed to do? There are several reasons that that would be so. And the first and probably the most obvious is that the jury was not instructed that it couldn't consider the gang evidence in the Perrine case. Gang evidence is extremely inflammatory, extremely prejudicial. It permits the jury to infer propensity and guilt by association. That would be one of the major reasons. Now, in this case, the gang allegations were made in the Hernandez incident, but they were not made in the Perrine incident. And although Judge Tochterman, nine months before trial, treated them both as gang cases when he consolidated them, the prosecutor didn't try it that way, the court didn't instruct that way, and the prosecutor didn't plead it that way. So under the Bean analysis of this Court, the spillover effect would be substantial and prejudicial, substantially injurious to the defense, because it would have enabled them to infer propensity and guilt by association. Don't you have a propensity problem almost any time you consolidate two cases? You do. And that's why the jury instructions are so important. And in fact, in the Zafiro case, that's what saved that case, was the fact that the instructions cured any potential prejudice from the consolidation there. Now, here the gang allegations are charged as to one count, but the expert testimony of the gang expert references home invasion as a primary activity of the gang. So what the prosecutor didn't attempt to get through the front door by charging it or making an 1101B motion to use that and have the jury instructed, it came in through the back door. It came in through the back door when she says that gang relies on gang allegiance, says why these two committed both these crimes together, and argued in her opening summation also that the primary activities of the Nortenos were attempted murder and home invasion, again, linking the two cases. It's a pretty high standard you have to show, you have to meet to show that there's some prejudice. Don't you have to show that the jury's actually inflamed in order to satisfy the standard? Well, this Court has found that where the verdict was guilty as charged on all counts, that is evidence that the jury was unable to separate them. So that would be the case here. I can see in this case the standard review might make a difference. But let me ask this. Even if we were to look at this de novo, are we still bound by the AEDPA rule that, you know, it has to be contrary to a Supreme Court law? No. Yes? No. In other words, under that standard, we can look to Ninth Circuit law? Pardon me? We can look to Ninth Circuit law? Yes. All right. And that's why Bean becomes such an important decision on this issue. All right. So despite the conjecture about cross-admissibility and the disposition of the pretrial severance motions, no one pursued any 1101B theory of admissibility. And Judge Alba, when he rules on the severance motion right before trial, he actually finds that cross-admissible evidence is not required to order joinder, which seems to imply he found the evidence wasn't cross-admissible. But why wouldn't it have been admissible? Well, if the prosecutor had charged it differently, had taken action to argue it should be admitted under 1101B, the result might be different. But we look at this. Well, regardless, you have to demonstrate, even under de novo review, that there's some prejudice here. Yes. So if there had been separate trials, but the evidence would have been permitted as all the evidence would have been permitted in each of the trials, then it's hard to see how there could be any prejudice under any standard of review. Well, we have some difficulty making that inquiry because the prosecutor didn't attempt to do that in this case. She didn't introduce it. Well, they didn't have to. But as part of our analysis, don't we have to consider that? Well, we consider the case as it was tried here and whether it was substantially injurious. That's the standard under Brecht. So it was substantially injurious here because the no determination was made that this was admissible under 1101B. It doesn't appear to me that it would be admissible under 1101B. But even if that were the case, the Court would still have to consider an evidence code section 352 issue before admitting it, and that is whether its prejudicial effect outweighed its probative value. And, of course, none of that happened here. And the jury wasn't instructed on how to properly use 1101B. They were just instructed, generally speaking, on gang enhancement. And then, as I said, we've got the prosecutor coming in the back door arguing that the two cases, the two crimes here are gang crimes, and the gang expert saying that home invasion is, in fact, a primary activity of the Nortenos. So under those circumstances, it is substantially injurious to the defense. Again, under Bean, because of the propensity. And that propensity issue would have been litigated had the prosecutor made an 1101B effort to get this information to be cross-admissible. But basically, everyone admitted there was nothing cross-admissible here in the physical evidence, and no jury instructions that were given here prevented. But it doesn't have to be cross-admissible for cases to be consolidated. I mean, that's a factor that's to be considered, but that's not a requirement. That's right. And that's why Judge Alba felt – made that finding that it didn't have to be – you And the State court did, in fact, find there was some cross-admissibility. Well, here's where we have the problem. The due process issue on this is considered based on what actually happened at the trial. The State law issue here of severance was decided pretrial, first by Judge Tochterman nine months before the case was tried, and then immediately before trial the severance motion was made. Now, the court of appeal looked only to the point in time at which the severance and consolidation motions were made to judge prejudice. So the State appellate court never considered prejudice as things actually played out at trial. So you think that the State court of appeals' decision that the identity evidence was cross-admissible, if that was correct at the time, but did it turn out to be wrong later? Is that your argument? It wasn't even correct at the time because the assumptions, the presumptions that Judge Tochterman made were wrong. He assumed they were both gang cases. They weren't. They weren't charged that way. He assumed they were going to be charged that way. They weren't. He found total cross-admissibility, but nobody ever went anywhere with that. So when we have the severance motion being decided right before trial starts, we have Judge D'Alba, the trial judge, saying, well, cross-admissibility isn't necessary, is not a necessary condition for joinder, which seems to imply that he found there was no cross-admissibility. Kassa, I'm a little bit confused by part of your argument because you say that the California court of appeal did not consider what happened at trial, but in the discussion of severance, it does talk about the admission of trial evidence and goes through a couple of pages discussing trial evidence. And I'm not sure what point you were trying to make about their opinion. Well, her opinion explicitly states that she is considering the record as it existed at the time the motions were made. And she cites State law to that effect. And that's the problem. You know, the State abuse of discretion on a granting of a severance motion or granting of a consolidation motion is based on the record at the time the motion is made. And that's why it doesn't suffice for the Federal due process issue, which has to be based on what actually happened at the trial and whether it was grossly unfair. And here it was grossly unfair because of propensity and because of the statute. But wasn't these pretty distinct acts and fairly simple and fairly easily compartmentalized? And isn't that compartmentalization is sort of the test, isn't it? It is, and they should have been. And a necessary component of compartmentalization is that you have to have the jury instructed on how to do that. Kagan. Counsel, did you wish to save some rebuttal time? I did. Thank you, Your Honor. Thank you. We'll hear from the State. Good morning, Your Honor. May it please the Court. Justin Riley on behalf of the Warden. The first issue, the de novo versus epideference question is, as opposing counsel correctly states before the Supreme Court right now, if my reading of the docket is correct, they have briefed and argued the case and it's waiting for a decision. That being said, it can be denied de novo. One thing, though, I would like to mention that takes it out of the usual is there de novo, is there epideference case, is that the State here applied the functional equivalent of the due process standard here. In Bean, this Court noted that there are three basic factors for analyzing a due process claim, and that was the relative weakness of the two joined cases, the cross-admissibility of the evidence that proved up the two cases, and the prejudice. That is exactly point for point what the State Court did here. They necessarily, by implication, rejected both the due process and state claims here. The analysis wouldn't have gone one bit differently. What are you saying? So you're saying because of that, it's not de novo review? No, it isn't de novo review at all. The State Court denied relief here. As Apelli pointed out in his supplemental excerpts of record, Brown on direct appeal argued separate subheadings, one, that it violated state law to join the two cases, and two, that it violated due process to join the two cases. When the State Court denied review, I'm sorry, when the State Court denied relief, it discussed relative weakness of the two cases, cross-admissibility of the evidence, and prejudice, finding no prejudice at all. That's all a due process analysis here is, is there prejudice. The State Court went through a three-page discussion of whether or not there was prejudice. Now, the State Court wasn't bound to have a backward-looking approach at the evidence. By that, I mean the State Court could permissibly and consistent with the Supreme Court precedent find that you look at the prejudice of the two cases at the time the ruling is made. There is no clearly established Supreme Court precedent dictating otherwise. And clearly established Supreme Court precedent must bind the State courts. The State court must look at this clearly established Supreme Court precedent and be compelled to offer relief or be compelled to analyze a case in a certain way. There is no clearly established Supreme Court precedent saying that the analysis of a joinder claim must be either forward-looking or backward-looking. Not surprisingly, this Court in Collins v. Reynolds has found there's no clearly established Supreme Court precedent on joinder and severance at all. That being said, even under de novo review, this Court could deny. I'd love to answer any other questions on the de novo or epideference standard, but even under de novo, this case is dead in the water. There is no conjecture necessary on whether or not there was cross-admissibility of the evidence. The State court here definitively declared the evidence is cross-admissible. Federal reviewing courts can't look behind that decision because the State court was caught in finding that the evidence was cross-admissible. Here, one need only imagine if the case had run, if instead of one case, the case had gone on as two cases. Here, to show identity and modus operandi, the prosecutor would have admitted all the gang evidence, all the evidence of the gun, all the evidence of the co-defendant, to show identity. The State court held as much. The evidence is cross-admissible. We don't have to wonder whether or not it was cross-admissible. Here, the prosecutor did not admit or present some of the evidence, some of the gang evidence, in support of the robbery count. That's simply a windfall. It's simply the prosecutor being generous. If the case had gone on as two cases, the prosecutor could very well have introduced that gang evidence as evidenced by the State court's ruling on the cross-admissibility. There is no question on cross-admissibility. It was. That's the end of the matter for us. The weak versus strong argument, one count was weak and one count was strong. Brown argues that the robbery count was the weaker count because one of the prosecution's witnesses came in and was undermined as to whether or not there was a bribe to make up the charges. But remember that the defense to both counts was, I didn't do it, and the witnesses are making this up to get money out of me. Both counts. So any evidence that undermined the robbery count as to whether or not there was an extortion for not testifying also undermined the attempted murder count. The defense to both counts was, I wasn't there, I'm sorry, I didn't do it, and the witnesses are only testifying as such because they're trying to get money out of me. Both counts. And both extortion claims were based on the same witness, Brown's girlfriend. And then the prejudice. That being said the argument that was just made about the witness, the one witness being falling apart as the case went on, Perrine, I believe. Sure. Perrine was the robbery victim and Perrine was admittedly not the best witness because he was a drug dealer, he was a little arrogant, and there were inconsistencies in his statement. But remember, on the other side, the victim, the testifying eyewitness victim in the other case was a gang member, a criminal, an admitted gang member, and there were inconsistencies in his story. And remember, the defense testimony that sought to undermine the eyewitnesses in both counts was Brown's girlfriend saying, listen, this stuff isn't true, the witnesses are only testifying this way because they want money out of us. The defense evidence to both counts was the same. The eyewitness victims on both sides were criminals with inconsistencies in their story. As the State court reasonably concluded, these cases were essentially the same and they were the same class of crimes. These cases were essentially the same. No prejudice resulted because of that. Did I answer your question? Yeah, you did. I have another one. And what about the argument about the instruction, the inadequacy of the instruction? Defendants would always, after the fact, love more instruction on certain matters, but none is constitutionally required. Brown can't point to any clearly established Supreme Court case that says propensity evidence is only good if we get certain instructions. There just is no clearly established Supreme Court case. There's no challenge to the instructions in this appeal. True. Other than? Other than inferentially that it was part of a prejudice mix. Sure. But the jury was also properly instructed as to you must find that the evidence proves each element of each crime beyond a reasonable doubt. So there was really no prejudice here. Sure, instructions would always help on how to use evidence, but one wasn't required here. It looks like I have nothing further. I'd love to answer any other questions, though. I think we don't have any at the moment. Thank you very much. Ms. Johnson, you have some rebuttal time remaining. Part of the reason Mr. Perrine's testimony was weakened so substantially was as he lost credibility, the case lost strength because he was the whole case. There was no physical evidence to corroborate. There was no investigation done in that case. And his brother was the only person who could corroborate anything, which is that some guys were there and something happened, but he wasn't able to identify them. So the whole Perrine case rested on Perrine. What specifically happened that made him, you say, that his credibility got so much weaker? I mean, he was a drug dealer. Everybody acknowledges that. But he did identify the defendant. What exactly do you mean when you say it fell apart? Well, his credibility, not only was he a drug dealer, he had a criminal past. He'd been found in possession of a firearm. He'd been found in possession of counterfeit money. There was evidence that he told Megan West that if she didn't testify for him and help him out in this case, he would cut her off as her supplier because she was a drug dealer, too. I think the prosecutor's description of what happened when all this impeachment, counterimpeachment all came in was that it devolved into an episode of the Ricky Lake show. And that's how bad this trial was on that Perrine issue. The lack of instructions here, if you look at Zafiro. Even though he's a, maybe he could be a terrible guy, it does not necessarily prevent the jury from believing him. Right. A terrible guy who's corroborated in some way. But he even lied to the police about what was stolen and how much it was. And he had to cut back on that testimony as well. You know, first it was $400, then it was $300. And then finally, when he originally called it in, he didn't admit that they had stolen drugs. He just wanted money. So he was a very weak witness. He also had some other, you know, quirky personality traits. He's very, a lot of braggadocio, a lot of exaggerated sense of self. He defined himself as an intellectual who self-medicates his ADHD condition with marijuana. It was unusual testimony, to say the least. Can I ask one question? Going back to the consolidation severance point, what is your response to Mr. Riley's argument that, well, the State Court of Appeal conducted, I think you call it the functional equivalent of a due process analysis. So it should be a deferential review. It isn't the functional equivalent of due process analysis. Because a state severance motion or consolidation motion is reviewed for abuse of discretion based on the evidence, the state of the record at that point in time. And the court repeatedly reiterated this in its opinion. So it did not, in disposing of the severance and consolidation motions, dispose of the due process issue, which is grossly unfair as it was tried. She didn't reach that question. And unless and until the U.S. Supreme Court extends Richter in Johnson v. Williams, Richter has not been extended to a reasoned opinion that simply overlooks a Federal claim. And that is what happened here. Thank you, counsel. The case just argued is submitted, and we appreciate very much the arguments of both of you. They've been quite helpful.
judges: Adelman, Tashima, Graber